Mark I. Bane
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone:  (212) 596-9000
Facsimile:  (212) 596-9090
E-mail:  *mark.bane@ropesgray.com*

Joshua Y. Sturm (admission *pro hac vice* pending)
**ROPES & GRAY LLP**
800 Boylston Street
Boston, MA 02199-3600
Telephone:  (617) 951-7000
Facsimile:  (617) 951-7050
E-mail:  *joshua.sturm@ropesgray.com*

*Counsel to Dr. Tam Lai Ling*
*as Petitioner and Proposed Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| KAISA GROUP HOLDINGS LTD., | Case No. 16-_____ (      ) |
| Debtor in a Foreign Proceeding.[1] | |

### DECLARATION OF DR. TAM LAI LING IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION UNDER BANKRUPTCY CODE SECTION 1517 AND OTHER RELATED RELIEF

I, Dr. Tam Lai Ling, pursuant to 28 U.S.C. § 1746, hereby declare, under penalty of

perjury under the laws of the United States of America, that the following is true and correct to

the best of my knowledge and belief:

---

[1] The last four digits of the Cayman Island Company Number Kaisa Group Holdings Ltd. are 2502.  The mailing address of registered office is Cricket Square, Hutchins Drive, P.O. Box 2681, Grand Cayman, KY1-1111, Cayman Islands.

1.      I have been appointed as the foreign representative of Kaisa Group Holdings Ltd. ("Kaisa" or the "Debtor").[2]

2.      In May 2015, Kaisa engaged me to serve as a Senior Advisor for the purpose of assisting with Kaisa's restructuring.  Previously, from March 2010 through December 2014, I served as an executive director and a vice chairman of Kaisa's board of directors (the "Board").

3.      I am a permanent resident of Hong Kong.

4.      I submit this declaration (this "Declaration") in support of the *Chapter 15 Petition for Recognition of a Foreign Proceeding* [ECF No.1] (the "Form Petition") and the *Verified Petition Under Chapter 15 for Recognition Pursuant to Section 1517 of the Bankruptcy Code and Other Related Relief* [ECF No. 2] (the "Verified Petition," and, together with the Form Petition, the "Chapter 15 Petition"),[3] which seeks entry of an order granting recognition to proceedings pursuant to sections 670 to 674 of the Companies Ordinance (Cap. 622) of Hong Kong (the "Hong Kong Proceeding") currently pending before the High Court of the Hong Kong Special Administrative Region (the "Hong Kong Court").

5.      By the Chapter 15 Petition, Kaisa has requested that this Court (i) enter an Order recognizing the Hong Kong Proceeding as a foreign main proceeding pursuant to sections 1515 and 1517(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), and granting further automatic relief pursuant to section 1520 of the Bankruptcy Code, or, in the alternative, (ii) enter an Order (a) recognizing the Hong Kong Proceeding as a foreign nonmain proceeding pursuant to sections 1515 and 1517(b)(2) of the Bankruptcy Code, and (b) granting further discretionary relief pursuant to section 1521 of the Bankruptcy Code.  The Hong Kong

---

[2] For the avoidance of doubt, Kaisa, as used in this Declaration, refers only to Kaisa Group Holdings Ltd., and not to any of its affiliates, subsidiaries or any consolidated entity.

[3] Except as otherwise indicated, capitalized terms used and not defined herein carry the meanings ascribed to them in the Verified Petition.

Proceeding and Petitioner's request for recognition are all in support of a scheme of arrangement pending before the Hong Kong Court (the "Hong Kong Scheme"), which is itself a component of the financial restructuring of Kaisa's offshore (*i.e.*, non-PRC) liabilities (the "Restructuring").

6.    Although only recently appointed as Kaisa's foreign representative, as stated above, I have been engaged in Kaisa's restructuring efforts as Kaisa's Senior Advisor since May 2015 and previously served as an executive director and a vice chairman of Kaisa between March 2010 and December 2014.  By virtue of these roles, I am familiar with, and have been involved in, (i) the Restructuring since May 2015 and (ii) Kaisa's general financial affairs between March 2010 and December 2014.  The facts set forth herein are based on my personal knowledge or, as indicated below, are derived from the books and records of Kaisa or from other sources, including court filings and announcements made by Kaisa on the website of the Stock Exchange of Hong Kong (the "SEHK"), which I consider to be reliable.

7.    On April 28, 2016, the Board passed board resolutions that, among other things, appointed me as the Debtor's legal foreign representative, with specific powers to individually bind and represent the Debtor in connection with any proceeding under chapter 15 of the United States Bankruptcy Code (a "Chapter 15 Proceeding").[4]  I am also charged with representing the Debtor in seeking any relief available in a Chapter 15 Proceeding with respect to the Hong Kong Proceeding, including for purposes of seeking any relief available to a "foreign representative" under chapter 15 of the Bankruptcy Code or other applicable law.

**A.  The Debtor and its Corporate Group Structure**

8.    On August 2, 2007, Kaisa was incorporated as an exempted company incorporated with limited liability under the Cayman Islands Companies Law (2004 Revision).

---

[4] Attached as Annex A to Exhibit C of the Form Petition is a copy of the Kaisa board of directors' resolutions appointing the Petitioner as the foreign representative in connection with this Chapter 15 Proceeding ("Board Resolutions").

3

Kaisa's registered office is in the Cayman Islands at Cricket Square, Hutchins Drive, P.O. Box 2681, Grand Cayman, KY1-1111, Cayman Islands.

9.      On June 16, 2008, Kaisa was registered as a non-Hong Kong company with the Hong Kong Companies Registry.  In 2009, Kaisa's ordinary shares (the "Kaisa Shares") were listed on the SEHK, under the stock code 1638.  Since March 31, 2015, however, trading in the Kaisa Shares on the SEHK has been suspended.

10.     Kaisa is a holding company that is the ultimate parent of an international group of companies (the "Kaisa Group"), which includes a large number of intermediate holding companies incorporated in the People's Republic of China ("PRC"), Hong Kong, the British Virgin Islands (the "BVI"), and the Cayman Islands.  Kaisa's business is to hold shares (directly and indirectly) in its subsidiary entities and to raise funding for the business and the operations of the Kaisa Group.  The Kaisa Group's organizational structure is depicted by the structure chart appearing as Exhibit C to the Verified Petition.

**B.  The Business of the Debtor and the Kaisa Group**

11.     The Kaisa Group is primarily engaged in the development in the PRC of large-scale residential properties, as well as integrated commercial properties.  The Kaisa Group has a diversified land bank of approximately 22.5 million square meters of gross floor area.  Kaisa Group operations span 30 cities in five regions throughout the PRC.  Those operations focus on mass market housing demand.  Kaisa, itself, is primarily involved in investment holding, while certain of Kaisa's PRC subsidiaries focus on actual property development and holding of investment properties.

12.     The Kaisa Group also engages in property management, development of shopping mall and hotel operations, and catering services.  It has numerous property development projects,

4

including completed properties, properties under development and properties for future development, in 30 cities throughout the PRC.

13.     The Kaisa Group is divided into "offshore" entities (the "Offshore Entities") and "onshore" entities (the "Onshore Entities").  The Offshore Entities consist of entities within the Kaisa Group that are incorporated outside of the PRC.  The Onshore Entities consist of entities within the Kaisa Group that are incorporated in the PRC.

### C.  Summary of Assets

14.     Kaisa's unaudited September 2015 balance sheet reflects the Kaisa Group's total current assets as approximately US$16.1 billion and total non-current assets of approximately US$2.0 billion.[5]  In addition, Kaisa's assets include US$100,000 in a New York-based trust account maintained with Ropes & Gray LLP.

### D.  Summary of Significant Indebtedness

15.     Kaisa has current liabilities of approximately US$14.9 billion, and non-current liabilities of approximately US$1.6 billion.[6]  Kaisa is unable to satisfy the liabilities currently due and payable to its creditors.

16.     Kaisa has financed the operations of the Kaisa Group through the borrowings described below.

---

[5] Unless otherwise indicated, all stated amounts are derived from Kaisa's unaudited consolidated management accounts prepared for the year 2014 and the first nine months of 2015.  The Debtor has also engaged outside professionals to review these unaudited consolidated management accounts.

[6] Kaisa's reporting currency is Chinese Yuan ("RMB").  For convenience, certain figures appearing in this Declaration and certain documents submitted in support of the Hong Kong Proceeding include conversions of certain RMB amounts into U.S. Dollars.  In order to remain consistent with the documents filed in support of the Hong Kong Proceeding, the foreign currency exchange rates used in this Declaration are the same prevailing rates of exchange on March 22, 2016 that were used in the explanatory statement filed in the Hong Kong Proceeding (the "Explanatory Statement"): HKD1.0000 to RMB 0.8374; USD1.0000 to RMB6.4935 and USD1.0000 to HKD7.7540.

a.  <u>Offshore Entities</u>

17.     Kaisa has undertaken a number of offshore financing transactions, which

currently include the following offshore debt obligations: the Existing HY Notes, the Convertible

Bonds, and the Existing Offshore Loans (collectively, the "Offshore Debt").  Kaisa also has

contingent liability acting as guarantor in respect of the ICBC Paris Loan Guarantees (each, as

defined and further described below).

18.     Each of the Existing HY Notes, Convertible Bonds, and Existing Offshore Loans

are affected by the Hong Kong Proceeding and would be restructured under the Hong Kong

Scheme.  Only Kaisa's contingent liability in respect of the ICBC Paris Loan Guarantees will not

be subject to the Hong Kong Proceeding, nor is it affected by the Hong Kong Scheme.

i.  *The Existing HY Notes*

19.     From September 2012 to June 2014, Kaisa issued the following Existing HY

Notes to investors under applicable indentures ("Existing Indentures"):

- *2016 Notes*.  Senior RMB-denominated 6.857% global senior notes due on April 22, 2016 in an amount of RMB 1.8 billion (the "2016 Notes").  The amount outstanding under the 2016 Notes is approximately US$283 million.

- *2017 Notes.*  Senior 12.875% global senior notes due on September 18, 2017 in an amount of US$250 million (the "2017 Notes").  The amount outstanding under the 2017 Notes is approximately US$250 million.

- *2018 Notes*.  Senior 8.875% global senior notes due on March 19, 2018 in an amount of US$800 million (the "2018 Notes").  The amount outstanding under the 2018 Notes is approximately US$800 million.

- *2019 Notes*.  Senior 9.00% global senior notes due on June 6, 2019 in an amount of US$400 million (the "2019 Notes").  The amount outstanding under the 2019 Notes is approximately US$400 million.

- *2020 Notes*.  Senior 10.25% global senior notes due on January 8, 2020 in an amount of US$500 million (the "2020 Notes"; together with the 2016 Notes, the 2017 Notes, the 2018 Notes, and the 2019 Notes, the "Existing HY Notes").  The amount outstanding under the 2020 Notes is approximately US$500 million.

20.     The total amount outstanding under the Existing HY Notes is approximately US$2.2 billion.

21.     The Existing HY Notes are listed on the Singapore Exchange Securities Trading Limited.

22.     The Existing HY Notes are governed by New York law.

ii.  *The Convertible Bonds*

23.     On December 20, 2010, Kaisa issued RMB 1.5 billion U.S. Dollar-settled 8% convertible bonds, which are governed by English Law (the "Convertible Bonds") under a Trust Deed dated December 20, 2010 (as amended, supplemented or otherwise modified, the "Trust Deed").  The Convertible Bonds were due on December 20, 2015.  Upon their maturity, the principal amount outstanding was US$231.6 million.

iii.  *Existing Offshore Loans*

24.     Kaisa has loans outstanding with, and other indebtedness owing to, the Hongkong and Shanghai Banking Corporation Limited ("HSBC") and Industrial and Commercial Bank of China (Asia) Limited ("ICBC;" respectively, the "HSBC Loans" and the "ICBC 2013 Loan," and, collectively, the "Existing Offshore Loans").

25.     The HSBC Loans consist of:

- *HSBC 2013 Loan*.  A credit agreement dated August 2, 2013 and governed by Hong Kong law whereby HSBC loaned Kaisa HK$400 million (the "HSBC 2013 Loan").  Approximately US$46.4 million is outstanding.

- *HSBC 2014 Loan*.  A credit agreement dated May 26, 2014 and governed by Hong Kong law whereby HSBC loaned Kaisa HK$400 million (the "HSBC 2014 Loan").  Pursuant to a subsequent agreement between Kaisa and HSBC on or about August 11, 2014, the amount outstanding was converted to RMB.  The principal outstanding amount is approximately RMB 317 million (approximately US$48.8 million).

- *HSBC ISDA*.  An unsecured 2002 ISDA Master Agreement dated April 11, 2013 (together with its schedules and confirmations) and governed by

7

English law, to manage Kaisa's foreign exchange risk arising from the issuance of the RMB-denominated 2016 Notes (the "HSBC ISDA").  As of April 22, 2016, approximately US$12.4 million was due to HSBC pursuant to the HSBC ISDA.

26.    The ICBC 2013 Loan is governed by a Hong Kong law credit agreement dated September 2, 2013 in the amount of HK$250 million.  The amount outstanding under the ICBC 2013 Loan is approximately US$20.0 million.

27.    The following parties are currently subject to an intercreditor agreement dated December 20, 2010 (as amended and supplemented from time to time, the "Intercreditor Agreement") with respect to obligations under the Existing Indentures, the Trust Deed and the Existing Offshore Loans (except for the HSBC 2014 Loan and the HSBC ISDA):

- Citicorp International Limited ("Citi") in its capacity as trustee of the Existing HY Notes, the Convertible Bonds and as Common Security Trustee (as defined in the Intercreditor Agreement);
- HSBC in respect of the HSBC 2013 Loan; and
- ICBC in respect of the ICBC Loan.

28.    The Intercreditor Agreement is governed by New York law.

29.    Pursuant to the terms of the Intercreditor Agreement, the holders of the Existing HY Notes, the Convertible Bonds and the Existing Offshore Loans (other than the HSBC 2014 Loan and the HSBC ISDA) have equal priority in respect of, and a pro rata entitlement to, the security interests under the Intercreditor Agreement (*i.e.*, "Existing Collateral").

30.    Further, Kaisa's obligations under the Existing HY Notes, the Convertible Bonds and the Existing Offshore Loans (except for the HSBC 2014 Loan and HSBC ISDA) are guaranteed on a joint and several basis by certain of Kaisa's offshore subsidiaries (the "Subsidiary Guarantors").

31.    Certain of the Subsidiary Guarantors also granted a pledge in favor of Citi (as trustee) over shares held by the relevant guarantor over its own immediate subsidiaries.

8

32.     The Restructuring will, if implemented, also release the Subsidiary Guarantors from liability in respect of their current obligations.

iv.  *ICBC Paris Loan Guarantees*

33.     Kaisa provided certain guarantees (collectively, the "ICBC Paris Loan Guarantees") for three (3) U.S. dollar-dominated term loans granted by Industrial and Commercial Bank of China, Paris Bank ("ICBC Paris") to Wan Jin Chang Investment Company Limited, a Hong Kong company and one of the Offshore Entities (collectively, the "ICBC Paris Loans").

34.     The aggregate amount outstanding under the ICBC Paris Loans is approximately US$33.2 million.

35.      Kaisa's liability under the ICBC Paris Loan Guarantees is a contingent liability as guarantor of the ICBC Paris Loans.  The ICBC Paris Loans and the ICBC Paris Loan Guarantees are governed by Hong Kong law.

36.     The ICBC Paris Loans are being restructured as part of Kaisa's onshore PRC restructuring, and they are outside the scope of the Hong Kong Scheme.

b.  Onshore Entities

37.     The Onshore Entities' operations are financed, in part, by 84 loans from 33 lenders totaling RMB 48.7 billion (the "Onshore Loans").  All of the onshore debt is governed by the laws of the PRC.

38.     Certain of Kaisa's subsidiaries have entered into loan agreements with various PRC banks.  These Onshore Loans are typically project loans to finance the construction of the Kaisa Group's projects (together with the Onshore Loans, the "Onshore Debt") and have a term of one to three years depending on the expected construction period.

39.     Certain of Kaisa's onshore subsidiaries have also entered into guarantee or security agreements with various PRC banks in connection with some of the Onshore Loans. These subsidiaries have thereby guaranteed or pledged certain of their properties and land use rights to secure the obligations of other Kaisa Group affiliates under the Onshore Loans.

40.     Kaisa's Onshore Debt, including the Onshore Loans for which Kaisa is a guarantor, is not subject to the Hong Kong Proceeding, nor is it affected by the Hong Kong Scheme.

c.   Intercompany Debt

41.     Kaisa is party to a number of intercompany loans with its subsidiaries.  These intercompany loans (the "Intercompany Debt") total approximately RMB 686.4 million (approximately US$105.7 million).  Kaisa's internal accounting policy subordinates intercompany debt to external debt.   The Intercompany Debt is not subject to the Hong Kong Proceeding, nor is it affected by the Hong Kong Scheme.

42.     As of September 30, 2015, approximately 90% of this Intercompany Debt (approximately RMB 623 million or US$96 million) is due to two PRC subsidiaries, Tai He Sheng Investment Company Limited and Dong Sheng Investment Company Limited.  Kaisa has obtained an undertaking from these two subsidiaries providing that they will not make any payment demand on Kaisa while external Kaisa indebtedness remains outstanding.

**E.  Events Leading to the Hong Kong Proceeding**

a.   Deteriorating Business Conditions Lead to Defaults on Offshore Debt

43.     Since December 2014, Kaisa has experienced a series of unforeseen events that caused serious disruption to its business, created acute liquidity pressure, and strained the capital resources of the Kaisa Group.

44.    In December 2014, as announced by public filing, the Kaisa Group became aware that certain of its sale and purchase agreements had been blocked by certain government authorities in Shenzhen, PRC.  Subsequently, Kaisa discovered that actions had been taken by other PRC local government authorities which were seriously disrupting several of Kaisa's projects, including (i) imposing restrictions on the registration or filing of any transfers or pledges relating to the property rights of certain unsold units of three property projects which are held for rental and/or self-use of Kaisa Group; (ii) not accepting routine applications for licenses, permits, approvals, registrations, and filings that are necessary during project development; (iii) suspending the processing of all planning-related and state-owned land-related applications and approval procedures (collectively, the "Blockages"); and (iv) imposing restrictions on transfers or pledges relating to two of the Group's completed Shenzhen property projects (the "Restrictions").  As a result of the Blockages and Restrictions, a number of Kaisa's onshore creditors took various legal actions, which included freezing of assets.  As of January 31, 2015, approximately RMB 550 million had been frozen by the relevant banks and approximately RMB 725.6 million was applied by way of set off to reduce the Onshore Debt.

45.    By April 2015, there were 70 preservation of assets applications in PRC courts pursuant to proceedings commenced by onshore creditors, with an aggregate value of RMB 14.8 billion (approximately US$2.3 billion).  Kaisa is also currently engaged in numerous lawsuits and arbitrations with onshore creditors.  None of the foregoing proceedings are located in the U.S.

46.    Cash collections from Kaisa Group's property sales decreased from US$343 million in November 2014 to US$23 million in February 2015.  By April 9, 2015, the Blockages

relating to a majority of unsold units had been lifted, however the asset freeze orders granted by the PRC courts remained.

47.    Kaisa's diminished cash balance and the acute pressure on its liquidity impacted Kaisa's ability to service its Offshore Debt.  Beginning in February 2015, Kaisa failed to make a series of payments that were due and payable under certain Existing HY Notes, the Convertible Bonds, and the Existing Offshore Loans.

   b.   Financial Reporting Difficulties

48.    Kaisa was not able to publish its 2014 annual financial report (the "2014 Annual Report") by its due date of April 30, 2015, and Kaisa issued an announcement that it needed additional time to finalize the 2014 Annual Report due to, among other things, questions raised by Kaisa's auditor.  Kaisa has yet to release the 2014 Annual Report or any subsequent financial reports.

49.    Kaisa established an independent committee to review, among other things, the questions raised by its auditor (the "Independent Committee").  In October 2015, Kaisa's Independent Committee engaged FTI Accounting and Advisory Services Ltd. ("FTI") to assist it with investigations into the matters raised by Kaisa's auditor in connection with the audit of the consolidated financial statements for the financial year ended December 31, 2014.

   c.   Negotiations with creditors

50.    In or around February 2015, in order to consider a global restructuring, Kaisa engaged Houlihan Lokey (China) Limited ("Houlihan Lokey") to act as its financial advisor, the Hong Kong office of the law firm of Sidley Austin LLP as its global legal advisor, and several additional country-specific legal advisors (collectively, the "Kaisa Advisors").

12

51.     On or around March 12, 2015, a group of Scheme Creditors (as defined below) was formed, comprising a total of eight holders of Existing HY Notes and Convertible Bonds (the "Ad Hoc Group").  The Ad Hoc Group is represented by a subset of four holders of Existing HY Notes and Convertible Bonds (the "Steering Committee").  The Steering Committee is represented by the Hong Kong office of Kirkland & Ellis LLP, as its legal advisor and Moelis & Company Asia Limited, as its financial advisor (the "Steering Committee Advisors").

52.     Kaisa, together with the Kaisa Advisors engaged in extensive negotiations with the Steering Committee Advisors regarding Kaisa's Offshore Debt.  On January 10, 2016, the Steering Committee Advisors and Kaisa agreed on the terms of a Restructuring Support Agreement (the "RSA"), whereby Scheme Creditors were given the option to sign the RSA to bind them to vote in favor of the scheme of arrangement reflected in the Hong Kong Scheme in return for which they would be eligible to receive a cash payment (a "Consent Fee").   Shortly after Kaisa's public announcement of the RSA, Kaisa received an alternative restructuring proposal from BFAM Partners (Hong Kong) Limited ("BFAM").  As announced in a SEHK announcement on March 17, 2016, Kaisa disclosed that such group of Scheme Creditors led by BFAM had entered into a Support Undertaking agreement (the "Support Undertaking," and, together with the RSA, the "Support Agreements"), reflecting slightly improved economic terms and substantially the same support commitments as the RSA.  The RSA was also (i) amended to reflect the improved economic terms and (ii) re-opened for accession by Scheme Creditors so that all Scheme Creditors had the same opportunity to support the Hong Kong Scheme in return for the same level of Consent Fee.  As of the date of this Declaration, approximately 96.25% of

the value of the Offshore Debt subject to the Hong Kong Scheme has been committed to support the Hong Kong Scheme under the Support Agreements.

i. *Terms of the Support Agreements*

53.     Scheme Creditors who entered into or acceded to the Support Agreements agreed that they would, among other things, (i) vote in favor of the Hong Kong Scheme and (ii) withhold from taking any enforcement actions.

54.     The Support Agreements will terminate immediately upon the occurrence of certain specified events including, among others, the Restructuring taking effect, the Hong Kong Scheme not being approved by a majority in number representing at least 75% in value of the Hong Kong Scheme creditors present and voting at the Scheme Meeting, or the longstop date of July 31, 2016.

55.     The Consent Fee is equal to 1% of the aggregate principal amount of any Existing HY Notes, Convertible Bonds and/or Existing Offshore Loans that a Scheme Creditor signed up to the Support Agreements, and is payable in accordance with the terms of the Support Agreements

56.     The Hong Kong Scheme contemplates a restructuring in which the Existing HY Notes, Convertible Bonds, and Existing Offshore Loans are combined into a single class for voting purposes and each participating holder is entitled to elect among the following three options:

- Option 1.  Exchange some or all claims for: (i) new notes (the "New HY Notes") at an exchange rate of 1:1 with new principal amounts, new maturity dates, and new interest coupon schedules; and (ii) contingent value rights, providing upside sharing in the event that one or more trigger events occur. The covenants, guarantees, and collateral under the New HY Notes will be substantially similar to those provided under the Existing HY Notes.

- <u>Option 2</u>.  Exchange some or all claims for: (ii) New HY Notes at an exchange rate of 1:1.02598 with new principal amounts, new maturity dates, and new interest coupon schedules.

- <u>Option 3</u>.  Exchange some or all claims for new bonds (the "<u>Mandatorily Exchangeable Bonds</u>") at an exchange rate of 1:1.  If the amount of Mandatorily Exchangeable Bonds that Scheme Creditors elect to receive exceeds the exchange date principal amount represented by the Convertible Bonds, claimants will receive a pro rata share of their claim with the excess to be allocated, at their election, to New HY Notes and contingent value rights (Option 1) or New HY Notes (Option 2) pursuant to the terms of the Hong Kong Scheme.

*ii.  Onshore Debt Negotiations*

57.    Kaisa has also conducted extensive negotiations with its onshore creditors through a committee of seven of the eight largest onshore creditors (the "<u>Onshore Creditor Committee</u>").

58.    In August 2015, those negotiations culminated in the entry into an onshore framework agreement between the Kaisa Group and the Onshore Debt creditors (the "<u>Framework Agreement</u>"), which took into consideration the Offshore Debt restructuring being proposed between Kaisa and the Scheme Creditors.  The key terms of the Framework Agreement include:

- no reduction in the principal debt;

- extension of maturity for three years, except for loans secured against investment properties;

- repayment of facilities with sufficient collateral to be in line with the progress of sales in respect to the relevant project;

- repayment of facilities which no longer have collateral or facilities with bullets at maturity;

  ° for projects where there is insufficient collateral, repayment is to be based on a combination of (a) amortization based on sales progress; and (b) a bullet repayment at maturity;

- onshore creditors shall waive any penalty interest or breach of contract penalties on any overdue debt accrued before the signing of the Framework Agreement;

- onshore creditors will withdraw all court actions, arbitration or enforcement proceedings and asset freezes after amended loan agreements are signed; and

15

- the offshore restructuring is to be completed as soon as possible, with the terms not to be superior to the terms of onshore restructuring agreements.

59.     Shortly after the signing of the Framework Agreement, Bank of China, the largest Onshore Debt creditor with 22% of the Onshore Debt, agreed to a restructuring of its Onshore Debt.  Currently, approximately 90% of the Onshore Debt outstanding as of December 31, 2014 (i) is subject to restructuring agreements with Kaisa, (ii) has been repaid, or (iii) are loans in good standing which did not require restructuring.  I am informed by Kaisa that the remaining balance of 10% of the aggregate value of the loans is still under restructuring negotiation.  I am not aware of any pending foreign restructuring proceedings with respect to the Onshore Debt.

**F.  Commencement of the Hong Kong Proceeding**

60.     On March 24, 2016, Kaisa commenced the Hong Kong Proceeding by filing an *Ex-Parte Originating Summons* in the Hong Kong Court, pursuant to which Kaisa sought an order granting permission to, *inter alia*, convene a meeting of its creditors affected by the Hong Kong Scheme (the "Scheme Creditors"), as a single class, for the purpose of considering and, if thought fit, approving the Hong Kong Scheme (the "Hong Kong Scheme Meeting").

61.     On April 19, 2016, the Hong Kong Court heard Kaisa's application and issued the requested order approving the relief Kaisa had sought (the "Hong Kong Convening Order").[7] Amongst other things, the Hong Kong Convening Order directed that:

- the Hong Kong Scheme Meeting shall take place on May 20, 2016;
- Brandon Gale of Houlihan Lokey, or such other person as approved by the Court, shall serve as the chairperson for the Hong Kong Scheme Meeting;
- the Debtor shall give the Scheme Creditors not less than 21 days' notice of the Hong Kong Scheme Meeting;
- notice of the Hong Kong Scheme Meeting shall be circulated to the Scheme Creditors in the following ways:

---

[7] See Annex B to Exhibit C to the Form Petition.

16

- o   by notice on the Scheme website (www.lucid-is.com/kaisa) (the "Scheme Website");

- o   by publishing information through the Clearing Systems;

- o   by notice via electronic mail to each person who Kaisa believes may be a Scheme Creditor and for whom Kaisa has a valid email address; and

- o   by advertisement in the Cayman Compass, the South China Morning Post, the Hong Kong Economic Times (a Chinese language newspaper), and the Wall Street Journal (international edition).

- the notice of the Hong Kong Scheme Meeting contain a link to enable Scheme Creditors to access electronic copies of the documents relating to the Hong Kong Scheme from the password protected Scheme Website, including, the Hong Kong Scheme documents, the Explanatory Statement (a document which is, I am advised by Ropes & Gray LLP, broadly equivalent to a disclosure statement under section 1125 of the Bankruptcy code), and the "instruction packet" (instructions and voting procedures).

- at 2:30 p.m. on June 10, 2016, the substantive hearing at which the Hong Kong Court will determine whether or not to sanction the Hong Kong Scheme (the "Sanction Hearing") shall be heard.

### G.  Kaisa's Center of Main Interest and Significant Ties to Hong Kong

62.    Kaisa is organized under the laws of the Cayman Islands, but Kaisa's management and financing business operations are run out of Hong Kong.  Kaisa has over 60 subsidiaries incorporated in Hong Kong.  These Hong Kong subsidiaries primarily function as investment holding companies.

63.    Kaisa is registered in Hong Kong as a non-Hong Kong company.  I am advised by Tanner De Witt (Kaisa's Hong Kong counsel) and believe that under Hong Kong law, registration as a non-Hong Kong company is mandatory for a company that is not incorporated in Hong Kong but has established a place of business in Hong Kong.

64.    As noted above, though suspended since March 31, 2015, the Kaisa Shares are listed on the SEHK, and have been listed there continuously since 2009.  Since the listing date, Kaisa has held its annual general meetings in Hong Kong.  Kaisa keeps all of its books and

records in Hong Kong per listing requirements and keeps a share register in Hong Kong.  Kaisa has also prepared annual returns and audited accounts for filing with the Hong Kong Companies Registry and disclosure via the SEHK.

65.     The Chairman of the Board resides in Hong Kong.

66.     Meetings of the Board are held in Hong Kong.

67.     Kaisa has signed service agreements with its directors, which are governed by Hong Kong law.

68.     Kaisa maintains the share certificates of its British Virgin Islands and Hong Kong subsidiaries in Hong Kong.

69.     Kaisa's principal place of business in Hong Kong is at Suite 2001, 20th Floor, Two International Finance Centre, 8 Finance Street, Central, Hong Kong (the "Hong Kong Principal Place of Business").

70.     Kaisa Group employs approximately ten full-time employees in Hong Kong who fulfill administrative and accounting functions at the Hong Kong Principal Place of Business.

71.     Kaisa's website description of the "Group Profile" begins by stating that "Kaisa Group [is] headquartered in Hong Kong."

72.     Kaisa has significant relationships with various Hong Kong banks and holds 33 bank accounts in seven Hong Kong-based banks.  Specifically, Kaisa uses the Bank of China (Hong Kong branch) for its major corporate and administrative expense payment bank accounts, and, as discussed above, obtained funding from ICBC and HSBC under the Existing Offshore Loans.

73.     The Existing Offshore Loans, except for the HSBC ISDA and the HSBC 2014 Loan, are denominated in Hong Kong currency.

18

74.     The Existing Offshore Loans are governed by Hong Kong law and/or bear interest rates tied to the Hong Kong Interbank Offered Rates.

75.     Kaisa's restructuring efforts are being coordinated from Hong Kong.

76.     Kaisa's restructuring advisors are predominantly located in Hong Kong.

77.     The Support Agreements entered into between Kaisa and the Scheme Creditors are governed by Hong Kong law.

**Kaisa's Connections to the United States and the Need for Chapter 15**

78.     On April 29, 2016, Kaisa deposited US$100,000 into the client account of Ropes & Gray LLP in New York City.  These funds continue to be held for Kaisa's benefit by Ropes & Gray LLP in its bank account held with Citibank, N.A. located in New York, New York.

79.     Additionally, the Existing HY Notes and the related guarantees are governed by the laws of the State of New York.

80.     The Intercreditor Agreement is also governed by the laws of the State of New York.

81.     This Court's entry of an Order granting recognition of the Hong Kong Proceeding is a condition precedent to the occurrence of the restructuring effective date under the Hong Kong Scheme (and, in particular, a precondition to the compromises therein becoming effective).

82.     It is my understanding that the Hong Kong Court will need to be reasonably assured that, if approved, any scheme of arrangement will have a real and substantive effect.  In particular, the Hong Kong Court will need to be satisfied that the debt compromised by the Hong Kong Scheme will be discharged under the law governing that debt, *i.e.*, New York law with respect to the Existing HY Notes.  For this reason, Kaisa is seeking an order that the Hong Kong Proceeding be given full force and effect.

19

83.    Additionally, chapter 15 recognition will allow me, as Kaisa's foreign representative, to protect Kaisa's assets from piecemeal attack by individual creditors in future U.S. litigation, thereby ensuring an equitable distribution to Kaisa's offshore creditors through the Hong Kong Proceeding.  The chapter 15 recognition will also facilitate an orderly restructuring of Kaisa in order to maximize the value available for Kaisa's creditors, in contrast to a liquidation.

84.    Absent recognition, Kaisa's ability to administer its assets pursuant to an orderly arrangement may be materially compromised.  Among other things, a denial of recognition may permit parties to disrupt the Restructuring.  Such a result would substantially interfere with Kaisa's ability to pursue a reorganization and maximize value available for its creditors.

**H.  Kaisa's Parallel and Inter-conditional Cayman Island Scheme Proceedings**

85.    Since Kaisa is incorporated in the Cayman Islands, a parallel and inter-conditional scheme of arrangement proceeding is currently occurring in that jurisdiction (the "Cayman Proceeding").  On March 24, 2015, Kaisa filed a *Petition for Scheme of Arrangement* pursuant to section 86 of the Cayman Islands Companies Law (2013 Revision) (as amended) (the "Cayman Scheme") with the Cayman Islands Grand Court (the "Cayman Court") to initiate the Cayman Proceeding.[8]  I, along with Kaisa's Hong Kong-resident Chairman of the Board, provided affirmations in support of the Cayman Proceeding to the Cayman Court.  On April 7, 2016, the Cayman Court granted an order giving Kaisa permission to convene a meeting of Scheme Creditors in the Cayman Islands upon substantially the same terms as the Hong Kong Convening Order.  To provide certainty with respect to the Restructuring, it is to be implemented through

---

[8] I am not seeking recognition of the Cayman Proceeding at this time, but reserve the right to do so in the future.

the Hong Kong Scheme in Hong Kong and supported by the Cayman Scheme in the Cayman

Islands, as well as recognition and additional relief under chapter 15 in the United States.

## Conclusion

86.    The Restructuring of Kaisa has been a lengthy, but collaborative, process.  With

cooperation and assistance from both Onshore creditors and Offshore creditors and advisors,

Kaisa has proposed a Restructuring that has obtained the committed support of Scheme Creditors

holding, as of the date of this Declaration, 96.25% of the aggregate affected debt.  Kaisa is

confident that the requisite majorities of Scheme Creditors will vote in favor of the Hong Kong

Scheme and that the Hong Kong Court will find that the Hong Kong Scheme should be

sanctioned.  Accordingly, I intend to return to this Court in the near future to seek U.S.

recognition of, and an Order of this Court giving effect to, the terms of the Hong Kong Scheme

so that the Restructuring can become effective.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is correct.

Dated: May 5, 2016
         Central, Hong Kong

_____
Dr. Tam Lai Ling